# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
J. MARK COULSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
Phone: (410) 962-4953
Fax: (410) 962-4953

April 24, 2020

LETTER TO ALL COUNSEL OF RECORD

     Re:    *Timothy R. v. Berryhill*
          Civil No. 19-cv-00915-JMC

Dear Counsel:

On March 20, 2019, Plaintiff petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for child's insurance benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for Summary Judgment, and Plaintiff's Reply. (ECF Nos. 17, 18 & 20). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the Social Security Administration ("SSA") if it is supported by substantial evidence and if the SSA employed the correct legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020). Under that standard, I will DENY the Plaintiff's Motion for Summary Judgment, GRANT the Defendant's Motion for Summary Judgment, and AFFIRM the Social Security Administration's judgment pursuant to sentence four of 42 U.S.C. § 405. This letter explains my rationale.

Plaintiff protectively filed his claims for benefits on April 17, 2015 alleging an onset date of August 1, 2000. His claims were denied initially, and again on reconsideration on March 17, 2016. A hearing was held on August 22, 2017 before Administrative Law Judge ("ALJ") Tierney Carlos. (Tr. 10–24). Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 7). The Appeals Council declined review, and consequently the ALJ's decision constitutes the final, reviewable decision of the SSA. (Tr. 1–9).

In arriving at the decision to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do

not yield a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect [his] ability to work," by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If he makes the requisite showing, the burden shifts to the Social Security Administration at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

In this case, at step one, the ALJ found that Plaintiff has not engaged in "substantial gainful activity" since August 2, 2011. (Tr. 12). At step two, the ALJ determined that Plaintiff has the following severe impairments: thoracic kyphosis, Scheuermann's disease, obesity, autism spectrum disorder, depression, and agoraphobia. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 13). Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no climbing of ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can never work at unprotected heights or operate a motor vehicle. The claimant is limited to performing simple, routine, and repetitive tasks but not a production rate pace (e.g., assembly line work). The claimant is limited to making simple, work-related decisions. The claimant can occasional contact with supervisors, coworkers, and the public. (Tr. 16).

At step four, the ALJ determined that Plaintiff has no past relevant work. (Tr. 22). After considering the testimony of a vocational expert ("VE"), the ALJ determined that there are jobs that exist in significant numbers in the national economy that he could perform. *Id.* Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame. (Tr. 23).

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and quotations omitted). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

On appeal, Plaintiff makes one argument: the ALJ's decision is not supported by substantial evidence of record. (ECF No. 17-1 at 6). Specifically, Plaintiff contends the ALJ erred at step-three of the sequential evaluation process by failing to properly evaluate whether Plaintiff's impairments met or equaled 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04, 12.06, and 12.10. *Id.* at 10.

At step three of the sequential evaluation process, the SSA determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2018). Listings 12.00 *et seq*. pertain to mental impairments. As pertinent here, listing 12.04 concerns depressive disorders, 12.06 concerns anxiety, and 12.10 concerns autism spectrum disorders. The claimant bears the burden of demonstrating that his impairment meets or medically equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986).

Each listing entails: (1) "paragraph A criteria," which consist of a set of medical findings; and (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A), (G). Specifically, Paragraph B consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.* § 12.00(A)(2)(b), § 12.04(B). To satisfy "paragraph B" of the mental impairment listings a claimant must exhibit either "marked" limitations in two of the first three functional areas, or "marked" limitation in one of the first three areas, with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(B).

Listings 12.04 and 12.06 further include a "paragraph C criteria." To satisfy paragraph C, a claimant must show that the disorder in the listing category is serious, persisted over a period of at least two years, was treated during that time period, and that the claimant has a "minimal capacity to adapt to changes" in their environment or new demands that are not already part of their daily lives. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C). A claimant's impairments meet Listings 12.04 and 12.06 by satisfying either the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. *See Rhonda H. v. Soc. Sec. Admin.*, No. 18-CV-3013-JMC, 2019 WL 3436495, at *3 (D. Md. July 30, 2019).

In this case, the ALJ applied the special technique[1] for evaluation of mental health impairments, using a five-point scale to rate a claimant's degree of limitation in the four functional areas: none, mild, moderate, marked, or extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The ALJ then made determinations and cited to evidence from the record to explain his conclusion that the severity of Plaintiff's mental impairments, singly and in combination did not give rise to listing level, nor medically equal the criteria of listings 12.04, 12.06, and 12.10. (Tr. 14). For the reasons detailed below, a review of the ALJ's decision makes clear that the ALJ adequately considered and discussed the relevant evidence in the record. The Court is satisfied that the ALJ's determination is supported by substantial evidence and sound application of the governing legal standards.

---

[1] The SSA employs the "special technique" to rate a claimant's degree of limitation in each functional area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(b), (c)(2), 416.920a(b), (c)(2) (2018).

The ALJ found that Plaintiff had a moderate limitation in all four functional areas. (Tr. 14-15). In the pending Motion, Plaintiff challenges the ALJ's findings regarding his ability to interact with others and adapt or manage himself. (ECF No. 17-1 at 14–15).

Plaintiff first disagrees with the ALJ's determination that his limitation in interacting with others was only moderate because, he contends, the ALJ misconstrued and mischaracterized the record. (ECF No. 17-1 at 14). In making this finding, the ALJ stated, in full:

> In interacting with others, the claimant has a moderate limitation. The claimant testified he has difficulty leaving the house alone and stated he requires accompaniment to go anywhere in public. Nevertheless, he is able to shop in stores, go to the movies occasionally, go out to restaurants for family birthdays, and attend NASCAR races with his family. Much of the claimant's social and emotional testing administered at Millersville was within normal limits, the only exception being his scores for social and withdrawal, which showed moderate limitations. Dr. Taller's consultative exam in August 2015 confirmed the claimant's good eye contact and cooperation during testing. His psychological treatment notes indicate a GAF score of 55, consistent with moderate social and occupational limitations. Based on his own admitted activities and his various psychological testing, the undersigned finds that he has moderate limitations in social interaction. (Tr. 14–15) (internal citations omitted).

Plaintiff argues that the ALJ attempted to downplay the extent of his inability to independently function. (ECF No. 17-1 at 15). He argues that a closer examination of the ALJ's citations to the hearing recording and Exhibit 6E, actually, reveal the following: Plaintiff must follow a strict routine and with any diversion from a strict routine, he became extremely irritable; that when goes to the grocery store he was with his mother; Plaintiff does not spend much time socializing and there are only a few people he got along with; that he spoke in a monotone voice; that Plaintiff struggled to hold conversation; that spoken instructions must be phrased in a certain way and repeated several times in order for Plaintiff to follow them; that making a phone call or driving a car would cause him anxiety; that his NASCAR trip was actually only twice per year, where he needed to be accompanied by family members and would sit inside rather than outside where there was less noise; and that even when he did things like go to movies or restaurants a few times per year that such activities were never done independently. (ECF No. 17-1 at 15). Plaintiff maintains that the ALJ's mischaracterization of the evidence and failure to articulate his rationale for finding moderate limitations in area of social functioning warrants remand.

Plaintiff also disagrees with the ALJ's determination, as to adapting or managing oneself, that he has experienced only a moderate limitation. (Tr. 15). In full, the ALJ stated:

> As for adapting and managing oneself, the claimant has experienced a moderate limitation. Although the claimant testified that his daily activities are very limited, he admitted to more than he alleges. According to his own function report, he spends about an hour a day doing his hobbies, which include reading, playing video games, taking care of his pets, and watching television or movies. The claimant testified he goes to restaurants to celebrate family birthdays and on an annual trip

with family to Dover Downs to watch NASCAR racing. His January 2011 spine imaging noted that he injured himself doing karate, suggesting another hobby or interest. The undersigned has considered the claimant's living arrangement with his mother and his need for accompaniment when he leaves the house; however, he is able to leave the house and perform activities of daily living and participate in activities for entertainment. (Tr. 15) (internal citations omitted).

Plaintiff argues that the ALJ failed to mention "important and material evidence" with respect to his function report and certain treatment records, which directly relate to the area of adapting and managing oneself under 12.00E.4. (ECF No. 20 at 5, ECF No.17-1 at 17).

With respect to both of these arguments, Plaintiff essentially refers to five groupings of evidence.[2]

First, Plaintiff directs this Court to three of Plaintiff's remarks within his Function Report. (ECF No. 17-1 at 15, 18). Therein, Plaintiff wrote that his "Asperger's causes him anxiety and sometimes stomach pain," and that he has "problems following instructions, concentrating, and having conversations as well. I also must follow a strict routine each day; if anything happened to divert from it, I would become extremely irritable." (Tr. 273 ). Plaintiff also reported that he did not drive because "[t]he thought of driving makes me anxious and fearful. I worry that I won't know what to do and I'll crash." (Tr. 276). Plaintiff reiterated that he responds "poorly" to stress "sometimes to the point of severe stomach pain." (Tr. 279).

Second, Plaintiff contends that his medical records reveal that Plaintiff had a history of engaging in aggressive behavior, including hitting his own leg when angry. In support thereof, he refers to his own, and his mother's description of his mental health, as provided to Anne Arundel Medical Center. (ECF No. 17-1 at 18) (citing Tr. 435–436, 439). Plaintiff also refers to statements made by his mother as part of her "Third-party function report." (ECF No. 17-1 at 17). Therein, Plaintiff's mother opined that her son "does not do well with change in routine, or if something doesn't happen. Anything disrupting his daily way of life causes anxiety, sometimes anger." (Tr. 267). Plaintiff's mother continued to state "[Plaintiff] has always known how well he can or can't handle a situation." *Id.* Further, she said that her son often needs repeated "special instructions," and she has learned over the years how to "instruct him in those situations." (Tr. 267).

Third, Plaintiff refers to aspects of the record that "reveal" Plaintiff had suicidal thoughts, suicidal ideation, and thoughts of slitting his wrist or his throat. (ECF No. 17-1 at 18). This "material evidence" is found within Plaintiff's own statement, in support of his disability appeal, wherein he said that since his initial social security request, there was a change in his physical or mental conditions. (Tr. 303). Next, Plaintiff to refers an outpatient psychological assessment wherein Plaintiff was asked "about self-injurious behavior," and he stated that "he gets frustrated easily and hits his leg but [the clinician] sensed he was holding something back or perhaps it was embarrassment?" (Tr. 381–82). In other psychiatric evaluation reports, Plaintiff reported that he had "suicidal thoughts but no [suicidal ideation]." (Tr. 383, 438). Specifically, in his initial mental

---

[2] The examples provided by Plaintiff in both sections largely overlap and are found in the same portions of the record. Accordingly, the Court will condense and group them together in the interest of clarity and efficiency. This analysis, nonetheless, applies equally to all of such evidence.

health evaluation at Anne Arundel Medical Center, the record noted that "[Plaintiff] denied history of suicide attempts.  [Plaintiff] admitted having suicidal ideations several days (without intent or pain).  [Plaintiff] denied history of homicidal attempts or ideations." (Tr. 435).  This was reiterated within the Hospital's "assessment and plan" portion of the record.  (Tr. 437).

Fourth, Plaintiff argues that the record indicates that he had issues with hygiene.  In support of this, Plaintiff refers to his own hearing testimony, wherein he told the ALJ that he showers "once or twice a week," but does not know why he does not do it daily.  (Tr. 59–60).  Finally, Plaintiff emphasizes the state agency physicians' conclusion that Plaintiff "responds poorly to stress and change."  (ECF No. 17-1 at 18) (citing Tr. 94, 111).  This report continues to note that Plaintiff "functions in a generally independent fashion and can meet various personal needs from a mental standpoint.  The [Plaintiff] is capable of completing daily living functions within the constraints of mental and cognitive status.  This individual manages within a basic routine."  *Id.*

Essentially, Plaintiff contends that the ALJ's failure to mention these particular aspects of the record requires remand.  This argument has no merit.  Notably, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision."  *Reid v. Comm'r, Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)), *see also Corcoran v. Astrue*, No. CIV. SKG-08-913, 2009 WL 3100350, at *28 (D. Md. Sept. 22, 2009) ("[A]n ALJ's failure to cite a specific piece of evidence is not an indication that the evidence was not considered.").  Rather, the ALJ's decision must contain "a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and reason or reasons upon which it is based."  *Reid*, 769 F.3d at 865 (quoting 42 U.S.C. § 405(b)(1)).  As described below, the ALJ's decision here meets the statutory requirements.

Fundamentally, Plaintiff's argument that the ALJ must analyze the medical evidence at both the second and third steps of the five-step framework, and then at each level of administrative review, is unavailing.  (ECF No. 17 at 11).  To the contrary, the Court of Appeals for the Fourth Circuit has held that the ALJ need only review medical evidence once in his decision.  *McCartney v. Apfel*, 28 Fed. App'x 277, 279 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding).  The Court agrees with the Commissioner that the ALJ's discussion was indeed thorough and that an ALJ is under no obligation to discuss the same evidence repeatedly but may incorporate or reference discussions found elsewhere.  *See e.g.*, *Leak v. Berryhill*, 2018 WL 1033276, at *6 (M.D.N.C. Feb. 22, 2018), *report and recommendation adopted*, 2018 WL 7076019 (M.D.N.C. Mar. 12, 2018) ("Although the ALJ did not expressly discuss those opinions at step three, he both discussed and weighed those opinions in conjunction with his formulation of the RFC.  That discussion permits the Court to trace the path of the ALJ's reasoning with regards to his step three findings.") (internal citations omitted).

Here, the ALJ provided a six-page narrative pertaining to Plaintiff's RFC, alone.  *See* (Tr. 15–21).  Therein the ALJ summarized Plaintiff's written statements and hearing testimony, made a credibility determination, reviewed the evidence (or, lack of) related to his alleged mental limitations, detailed Plaintiff's activities of daily living, considered Plaintiff's medical testing results, and weighed the medical opinion evidence.  The ALJ incorporated this extensive analysis

as his basis for his paragraph B mental functional analysis concerning the *degree* of plaintiff's limitations at Step Three. (Tr. 15). The ALJ's step-three analysis, read in combination with the RFC discussion, satisfies substantial evidence review.[3]

Contrary to Plaintiff's contention that "there was simply no *mention* of such important and material evidence in the ALJ's analysis" (ECF No. 17-1 at 18), the ALJ thoroughly evaluated and cited to the aforementioned medical records and Plaintiff's function report. *See* (Tr. 15–20). For instance, the ALJ reviewed Plaintiff's medical records and acknowledged that they "confirm his diagnoses but not the severity of impairment alleged." (Tr. 19). The ALJ also explicitly cited Plaintiff's hearing testimony. (Tr. 15). Moreover, the ALJ stated that he considered the whole record, and, absent evidence to the contrary "we take [him] at [his] word." *Reid*, 769 F.3d at 865, *see also Love v. Comm'r, Soc. Sec, Civ.* No. SAG-17-681, 2017 WL 6368620, at *3 (D. Md. Dec. 13, 2017), *report and recommendation adopted*, 2018 WL 3458715 (D. Md. Jan. 5, 2018).

To the extent Plaintiff relies on his own subjective statements, the ALJ adequately explained why he did not fully credit Plaintiff's subjective statements, and Plaintiff did not otherwise challenge that determination. The ALJ explained that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," and explained the basis for this credibility determination. (Tr. 16, 19). Specifically, the ALJ stated that "the evidence of [Plaintiff's] activities of daily living belie[] his claim that he is unable to maintain competitive employment from a mental capacity." (Tr. 20).

Plaintiff essentially asks the Court to reweigh the evidence in order to reach a different conclusion than the one the ALJ ultimately reached in this case. However, "this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence." *Griffin v. Comm'r, Soc. Sec.*, Civ. No. SAG-16-274, 2017 WL 432678, at *2 (D. Md. Jan. 31, 2017) ("[E]ven though [Plaintiff] might also point to evidence to support his viewpoint, this Court may not credit certain evidence over the evidence relied upon by the ALJ."). Given the ALJ's thorough discussion and consideration, there is substantial evidence for his conclusions, and the Court will not set aside the bases for the ALJ's decision merely because Plaintiff has a different interpretation of the evidence. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ."), *Helene C.*, 2020 WL 1694491, at *3.

## Paragraph C

Plaintiff contends that the ALJ also erred in evaluating the "C criteria" under Listings 12.04 and 12.06. (ECF No. 17-1 at 20).[4] To satisfy paragraph C, a claimant must show that the disorder

---

[3] *Helene C. v. Comm'r, Soc. Sec.*, 2020 WL 1694491, at *2–3 (D. Md. Apr. 7, 2020) ("As this Court has explained, an ALJ's failure to support a step-three conclusion may not be fatal if the ALJ cited to substantial evidence elsewhere in the decision to support his conclusion.").

[4] The "paragraph C" criteria of Listing 12.06 are the same as that of Listing 12.04 — requiring a claimant to show that his impairment results in a complete inability to function independently outside the area of his home. *See*

in the listing category is serious, persisted over a period of at least two years, was treated during that time period, and that the claimant has a "minimal capacity to adapt to changes" in their environment or new demands that are not already part of their daily lives. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(C).

Plaintiff argues that his need for accompaniment by his mother or other family members, his requirement for a strict routine, and his need for individual and group therapy are all examples of the psychosocial supports and structured settings, as noted under the C1 criteria. (ECF No. 17-1 at 23). In response, the Commissioner "does not concede that [Plaintiff] has produced evidence sufficient to satisfy the criteria in paragraph (c)(1); however, the ALJ's decision makes clear that he does not satisfy paragraph (c)(2)." (ECF No. 18-1 at 9). This Court agrees.

Plaintiff does not indicate how he satisfies the (c)(2) criteria, but merely states that "nowhere does the ALJ in his decision put into context Plaintiff's agoraphobia, nor does he discuss Plaintiff's statements regarding how anything outside of his strict routine would cause him extreme irritability." (ECF No. 17-1 at 24). Moreover, the evaluations themselves fail to suggest anything close to the level of severity required by Listing 12.04(C). No physician has opined that Plaintiff satisfies the paragraph "C" criteria. The ALJ recognized that Plaintiff had mental impairments "but they are not completely debilitating." (Tr. 19, 20). The ALJ explained that although Plaintiff's cognitive testing in October 2015 showed some deficiencies, his consultative exam in August 2015 indicated a normal mental status with a 30/30 on his mini mental status test. (Tr. 20).

Further, the ALJ recognized that within months of beginning his mental health treatment of record, by August of 2016, Plaintiff reported his symptoms of depression and anxiety were diminished by half. (Tr. 20) (citing Exhibit 10F/30). In September of 2016 Plaintiff reported more improvement, and by April of 2017 Plaintiff reported that his anxiety was stable. *Id.* (citing Ex. 10F/51). Plaintiff does not contend that he has suffered any episodes of decompensation, and the record does not indicate a risk of decomposition upon a minimal increase in mental demands. The ALJ explained that "evidence of [Plaintiff's] activities of daily living belie his claim that he is unable to maintain competitive employment from a mental capacity." (Tr. 20).

Because there is substantial evidence to support the ALJ's findings and the findings were reached through application of the correct legal standards, Plaintiff's Motion for Summary Judgment is DENIED (ECF No. 17), Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED, and the Social Security Administration's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

April 24, 2020                    /s/
                                  J. Mark Coulson
                                  United States Magistrate Judge

---

*Landers v. Comm'r, Soc. Sec.*, No. Civ. SAG-13-1390, 2014 WL 5495202, at *2 (D. Md. Oct. 28, 2014) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(C)).